BERNICE B. DONALD,
concurring.
While I join in the Court’s judgment, I write separately because I disagree with the majority’s analysis of Speers v. County of Berrien, 196 Fed.Appx. 390 (6th Cir.2006).
The majority frames the question before us as “whether at the time of the incident it was clearly established that the Eighth Amendment forbids a prison guard, who had observed a prisoner sleeping in his bunk only minutes earlier, from delaying five to seven minutes in checking on that prisoner after being asked by other inmates to attend to the prisoner because he appeared to be seriously ill.” Op. at 430 (emphasis added). Throughout its opinion, the majority continually relies on Berlan-ga’s prior observations of Goode. See, e.g., Op. at 431. (noting “[t]he fact that Berlanga had personally observed Goode both leaving the shower and then sleeping shortly before he was told that Goode appeared seriously ill would not lead Berlanga to suspect or guess that Goode had ingested a lethal dose of heroin and was at death’s door”).
However, Berlanga’s prior observations of Goode are irrelevant to whether Berlan-ga is entitled to qualified immunity. Up *435 until Berlanga arrived at Goode’s cell door, the facts here precisely mirror those in Speers, and therefore, Speers “squarely governs” this case. Brosseau v. Haugen, 543 U.S. 194, 201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). Here and in Speers, the guards knew that the decedent had been exhibiting non-serious medical symptoms. Compare R. 88-6, PageID#1023 (Berlanga indicating that he understood Goode to have a fever and to be too sick to perform his housing duties) with Speers, 196 Fed.Appx. at 395, 399 (explaining that the guards knew that Speers was exhibiting symptoms of the non-serious version of alcohol withdrawal). The guards also checked on each decedent and observed behavior that did not indicate a need for immediate medical attention. Compare R. 88-6, PagelD# 1023, 1026 (Berlanga observing Goode leaving the shower and sleeping) ivith Speers, 196 Fed.Appx. at 397 (guards observing Speers sleeping on the floor in his underwear, playing with his food slot, and picking at something on the wall). Another inmate then informed the guards that each decedent needed medical attention, relaying substantially similar symptoms. Compare R. 88-6, PageID# 1028 (foaming at the mouth, heaving snoring, gurgling noises, and “not looking good”) ivith Speers, 196 Fed.Appx. at 397 (foaming at the mouth, “hideous, weird look,” “trying to press his head through the plexiglass,” collapsing, and twitching). Lastly, the guards delayed in checking on the decedent. Compare R. 104, PageID# 1376-77 (delaying five to seven minutes) with Speers, 196 Fed.Appx. at 397-98 (delaying fifteen minutes). Thus, the facts from Speers are not “too factually distinct to” guide our decision here. Mullenix, 136 S.Ct. at 312.
Because Speers is indistinguishable, we must abide by its relevant mandates. See Brosseau, 543 U.S. at 201, 125 S.Ct. 596. Speers states that we measure a failure to act from the moment that an official is informed of a substantial risk of serious harm, without regard to the officer’s prior observations of the decedent. The Speers Court was explicit: “[A fellow inmate’s] statement — that Speers had ‘foam’ in his mouth, had a ‘hideous, weird look,’ was ‘trying to press his head through the plexiglass,’ and ‘collapsed’ and was ‘twitching,’ JA 692-93 — made [the guards] ‘aware of facts from which the inference could be drawn that a substantial risk of serious harm’ to Speers existed.” 196 Fed.Appx. at 398 (emphasis added). Speers affirmatively dispelled the significance of the guards’ prior observations: “[w]ith or without alcohol withdrawal, with or without training, the symptoms that [the fellow inmate] reported establish a triable issue of fact about whether the guards should have contacted medical personnel in response to this problem or at least should have tried to engage Speers verbally or entered his cell.” Id. (emphasis added). Thus, Berlanga’s prior observations of Goode are not significant for purposes of our review. Our analysis should only focus on Berlanga’s conduct subsequent to being informed of Goode’s serious medical symptoms.
The majority also distinguishes Speers by noting that “in any event, Berlanga’s five-to-seven-minute delay is significantly shorter than the guards’ more than fifteen-minute delay in Speers.” Op. at 431. Even though we should be wary of cases that are too factually distinct, I fail to see how differentiating between a mere matter of minutes effectively distinguishes Speers. While a ten-minute delay may be reasonable in one instance, it could be deemed excessive in another. We should not consider such minor differences in determining whether the law is clearly established.
*436 This case is a prime example. The majority accounts for Berlanga’s “other responsibilities,” Op. at 429, in finding that his five-to-seven-minute delay did not violate clearly established law. It may be that in a particular case other responsibilities prevented an officer from promptly responding to a substantial risk of serious harm. However, Berlanga stated that he immediately checked on Goode upon being informed of Goode’s serious medical symptoms. R. 88-6, PagelD# 1028. It therefore seems that any delay could be construed as a failure to act in response to a known substantial risk of serious harm. Accordingly, whether a particular delay was reasonable in light of surrounding circumstances is a consideration better suited for answering whether there actually was an Eighth Amendment violation. When we are only attempting to determine whether the law is clearly established, parsing between mere minutes amounts to a difference without a real distinction.
All of that being said, I agree with the majority that Speers does not clearly state that the guards’ brief delay constituted deliberate indifference in violation of the Eighth Amendment. In dicta, Speers simply mentions that the parties do not dispute that such symptoms require “prompt” medical attention. 136 Fed.Appx. at 398. Our court has yet to hold that a brief delay could constitute a violation of the Eighth Amendment. For that reason, I too would reverse the district court and grant Ber-langa qualified immunity.